# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY M. MIXON, et al., ) | |
| ) | |
| Plaintiffs, ) | <u>PUBLISH</u> |
| ) | |
| v. ) | CIVIL ACTION 14-0238-WS-B |
| ) | |
| NATIONSTAR MORTGAGE, LLC, ) | |
| ) | |
| Defendant. ) | |

## ORDER

This matter is before the Court on the plaintiffs' motion to remand. (Doc. 6). The defendant has filed a response and the plaintiffs a reply, (Docs. 12, 13), and the motion is ripe for resolution.[1] After careful consideration, the Court concludes the motion to remand is due to be granted.

## BACKGROUND

The plaintiffs filed suit in state court alleging that the defendant, as the assignee of their mortgage, has refused to accept bi-monthly mortgage payments even though the mortgage specifically provides for them. Based on its improper refusal to accept their payments, the defendant has declared the plaintiffs to be in default and the mortgage subject to foreclosure. The plaintiffs deny they are in default or that the defendant has a lawful right to foreclose, and they ask the court both to make a declaration to that effect and to enjoin the defendant from attempting to foreclose. (Doc. 1-1).

---

[1] The defendant's motion for leave to amend its notice of removal, (Doc. 8), to which the plaintiffs consent, (Doc. 10), is **granted**. As the parties agree, (Doc. 12 at 2-3; Doc. 13 at 1), the amendment eliminates the plaintiffs' challenge to the existence of complete diversity.

The defendant removed on the basis of diversity. The issue is whether the defendant has met its burden of showing that the amount in controversy exceeds the jurisdictional threshold.

## DISCUSSION

"[T]he party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Federated Mutual Insurance Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003). "[A] removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the … jurisdictional requirement." *Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (internal quotes omitted). "A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010).

"When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000). "In other words, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted," *id*., or, conversely, "the losses that will follow from" not obtaining the injunction. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 347 (1977).

The threshold question is how to evaluate the amount in controversy when the plaintiff seeks to enjoin foreclosure. This is not a novel issue, but courts have resolved it in a variety of ways.

> Other federal courts in Alabama … have taken one of four approaches to establish the amount in controversy in claims involving wrongful foreclosures: either (1) the value of the property; (2) the amount of the mortgage (i.e., the balance due

2

> on the promissory note secured by the mortgage); (3) the value of a temporary delay of a foreclosure; or (4) a plaintiff's equity in the real estate subject to foreclosure.

*Mapp v. Deutsche Bank National Trust Co.*, 2009 WL 3664118 at *1 (M.D. Ala. 2009) ("*Mapp II*"). The Court has addressed the issue three times, but its resolutions were driven by the unusual facts of those cases.

In *Castarphen v. Deutsche Bank National Trust Co.*, 2009 WL 1035490 (S.D. Ala. 2009) ("*Castarphen I*"), the Court determined that the monetary value to the plaintiff of an injunction against foreclosure was "the full value of her home." *Id*. at *6. This conclusion was based on the allegations of the complaint, which asserted that the removing defendant had no standing to foreclose and that the plaintiff's mortgage payments were actually payable to a third party, such that the plaintiff could still be required to make payments to the third party even after foreclosure. In such a situation, the plaintiff would lose her home without any offsetting benefit of reduced or eliminated debt, so the value to her of obtaining the injunction was the full value of her home. *Id*. & n.11.

On motion to reconsider, the plaintiff pointed out that she did not seek a permanent injunction but sought only to prevent foreclosure "until such time as the bona fides of the plaintiff's complaint can be heard before the Court after the taking of evidence" or "until such time as the material averments of the Plaintiff's complaint have been heard." *Castarphen v. Deutsche Bank National Trust Co.*, 2009 WL 1537861 at *4 (S.D. Ala. 2009) ("*Castarphen II*"). The Court concluded that the monetary value of the benefit to the plaintiff "of a temporary restraining order forestalling [the defendant's] foreclosure sale for an abbreviated period of time … is surely much lower than the value of permanent injunction of that foreclosure sale," since in the former situation she "may still lose her home … in a matter of days or weeks." *Id*. at *5 & n.11. Because the evidence reflected a property value of $86,000, *id*. at *2, the defendant was required to demonstrate

3

that the value of a "fleeting, transitory" restraining order was almost 90% that of a permanent injunction, a burden the defendant did nothing to carry. *Id*. at *5.

In *Reed v. Chase Home Finance, LLC*, 2011 WL 321737 (S.D. Ala. 2011), the plaintiff sought to enjoin a specific, scheduled foreclosure sale, "not to enjoin all foreclosure action permanently." *Id*. at *4. Because the defendant had voluntarily cancelled the foreclosure sale at issue before it removed the action, the value of the requested relief was effectively zero, since it had already been achieved. *Id*. & n.1.

The plaintiffs insist their case fits the mold of *Castarphen II* (the third *Mapp II* approach), asserting that they seek an injunction "only … until the issues of the alleged arrearage and refusal of tendered payments can be adjudicated." (Doc. 10 at 3). The complaint negates this contention. Therein, the plaintiffs "pray that the Court will take jurisdiction of their complaint, and *upon a hearing of the merits of same*, enter a declaratory judgment which finds and declares that the Defendant has no lawful right to a foreclosure of the Plaintiffs' mortgage, and which *enjoins the Defendant from attempting to foreclose such mortgage*." (Doc. 1-1 at 4 (emphasis added)). On its face, the complaint seeks a permanent, post-adjudication injunction. *Castarphen II* thus does not apply.

Under the unusual facts of *Castarphen I*, the Court used the value of the property (the first *Mapp II* approach) as the measure of the amount in controversy, but it questioned whether this would be the proper standard when the plaintiff's loss of the property would be accompanied by the elimination of the mortgage debt. In such a case, the Court stated, "all [the plaintiff] stands to lose in the event of foreclosure" is his "equity in the home." 2009 WL 1035490 at *6 n.12. This statement (reflecting the fourth *Mapp II* approach) was dicta because it was not necessary to the resolution of the plaintiff's remand motion.[2] The Court in

---

[2] *See United States v. Kaley*, 579 F.3d 1246, 1253 n.10 (11th Cir. 2009) "[T]he holding of a case is … comprised both of the result of the case and those portions of the opinion necessary to that result by which we are bound," while "dicta is defined as those

4

*Castarphen II*, recounting *Castarphen I*, echoed that, in "the run-of-the-mill case[,] the value of such injunctive relief would be confined to the plaintiff's equity interest in the property foreclosed upon." 2009 WL 1537861 at *4. This statement was dicta as well, and for the same reason. The Court therefore is not wedded to any particular method for gauging the amount in controversy in the usual case seeking to enjoin foreclosure.[3]

The defendant, invoking *Mapp II*, urges the Court to base the amount in controversy on the "value of the property" (the first *Mapp II* approach). (Doc. 1 at 6). In the alternative, the defendant asks the Court to measure the amount in controversy by the original loan amount or by the outstanding balance of the loan (the second *Mapp II* approach). (*Id*. at 7-8; Doc. 12 at 8).

In its first opinion, the *Mapp* Court, with little explanation, evaluated the amount in controversy based on the value of the property. *Mapp v. Deutsche Bank National Trust Co.*, 2009 WL 435069 at *3 (M.D. Ala. 2009) ("*Mapp I*"). This Court in *Castarphen I* "decline[d] to adopt the valuation approach of" *Mapp I*. 2009 WL 1035490 at *6 n.12. After *Castarphen II* was decided, *Mapp II* was released, which provides a much fuller analysis of the issue. This case represents the Court's first opportunity to consider *Mapp II*.

The plaintiff in *Mapp II* (decided on a motion to reconsider *Mapp I*) argued that "the amount in controversy is his equity in the real estate." 2009 WL 3664118 at *1. In responding to this contention, the *Mapp II* Court first reviewed Alabama mortgage and foreclosure law. It found that the mortgagor owes a duty to conduct the foreclosure sale fairly and in good faith, such that "[t]he sale price

---

portions of an opinion that are not necessary to deciding the case then before us.") (internal quotes omitted).

[3] The "usual case" for present purposes is a suit to permanently enjoin foreclosure based on existing circumstances by one entitled to foreclose in general but not under those circumstances, where the value of the property matches or exceeds the remaining mortgage debt plus other liens and the plaintiff does not seek to eliminate the mortgage debt by quiet title or otherwise.

5

is closely tied to fair market value to protect the mortgagor, junior mortgagees, and other lien holders." *Id*. at *3. "In sum, it is the value of the property that feeds the foreclosure formula," and "the property sells at fair market value, not the 'equity' claimed by the mortgagor." *Id*. "[T]he full purchase price changes hands after the sale," even if some amount representing equity eventually finds its way to the mortgagor's pocket. *Id*. "Therefore, the enjoinder of a foreclosure sale prohibits a transaction involving the whole value of the property." *Id*.

The *Mapp II* Court continued with a proposition from Alabama real property law. Ownership carries with it a "bundle of rights," among which is the right of peaceful possession and enjoyment of the property. 2009 WL 3664118 at *3 n.7. "Foreclosure will require [the plaintiff] to vacate his home and will cost him its title. From Mapp's perspective, then, it is the whole title and its 'bundle of rights' at issue." *Id*. at *4. Were an injunction to issue, "the benefits obtained by Mapp would be the right to retain ownership of and title to his home, as well as the right to occupy the home," and the monetary value of "these benefits, objects and rights are best measured by the value of the home itself." *Id*.

The Court agrees with the *Mapp II* Court that foreclosure cuts off a mortgagor's bundle of rights and that an appropriate monetary measure of the value of those rights is the value of the property. People acquire homes in order to own, possess and enjoy them, and this is so whether they live in them full-time, maintain them as weekend getaways, rent them, or leave them vacant while hoping for appreciation. What people willingly pay to acquire those rights – that is, fair market value – is thus a reasonably accurate measure of the monetary value of those rights[4] and of having those rights continue.[5]

---

[4] Because fair market value reflects the monetary value of the whole bundle of rights represented by ownership of property, it sets a ceiling on the value of the property for removal purposes. A particular mortgagor's special attachment to his home (which the defendant has neither asserted nor proved) cannot result in any higher valuation. To be considered as part of the amount in controversy, a benefit must not be "too speculative and immeasurable." *Ericsson GE Mobile Communications, Inc. v. Motorola*

But the Court cannot agree with *Mapp II* that the analysis can stop at this point.  In assessing the benefit to the plaintiff of injunctive relief, the comparison must be between the plaintiff's situation with an injunction versus the plaintiff's situation without the injunction, and that situation involves more than the loss or retention of a bundle of property rights.  The Court cannot consider only the advantages that success will provide the plaintiff without also accounting for the disadvantages that success will simultaneously inflict.  What the Court must determine is the net benefit to the plaintiff of victory (or net loss from defeat), not the gross benefit of victory regardless of its costs (or gross loss from defeat regardless of offsetting gains).

"In cases in which the plaintiff seeks to protect a business, the amount in controversy is the loss in profits to the plaintiff as a result of the regulation or alleged unfair competition or a breach of covenant; accordingly, a mere allegation of the decline in gross income is not sufficient."  14B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3708 (4th online ed. 2014).  In *Hunt*, for example, the Supreme Court noted that the apple growers and dealers represented by the plaintiff commission had "lost accounts in North Carolina as a direct result of the statute."  432 U.S. at 347.  The Court did not say that the gross value of the lost sales could be counted towards the amount in controversy.  On the contrary, the Court stated that "those lost sales could lead to diminished profits," which profits it included in the items that could contribute to the amount in controversy.  *Id*. at 347-48.  If it is true that the impact on a business must be

---

*Communications & Electronics, Inc.*, 120 F.3d 216, 221-22 (11th Cir. 1997).  The existence of idiosyncratic value beyond fair market value is probably speculative, and its magnitude is certainly immeasurable, that is, it cannot be "reduce[d] … to a monetary standard."  *Id*.; *accord Cohen*, 204 F.3d at 1078-79.  It thus must be ignored.

[5] That the mortgagor might someday lose his property to some other calamity – default and foreclosure, natural disaster, a bad poker hand – does not alter the fact that granting the injunction preserves the status quo ante of the uninterrupted, indefinitely continuing ownership, possession and enjoyment which the mortgagor purchased.

measured by net change in revenue rather than by gross change, then it is similarly true that the impact on a homeowner must be measured by net change in position and not by gross change.

Such a rule is especially appropriate in the foreclosure context, where loss of the property is inseparable from payment of the mortgagor's debt. That is, the mortgagor cannot lose his property without also gaining liberation from his mortgage debt. That he presumably does not desire such a tradeoff (since he is fighting foreclosure) is irrelevant, because the law makes the offset an inevitable feature of foreclosure.

Such a rule is also consonant with Eleventh Circuit cases that evaluate benefit with an eye to all the circumstances. For example, in *Cohen* the plaintiffs sought to enjoin the defendant from inaccurately advertising that its catalogue prices were lower than its store prices. Although at first blush such an injunction might seem favorable to the class, the Court noted that the requested injunction would not require the defendant to lower its catalogue prices (benefiting consumers) but just as easily could cause the defendant to raise its store prices (harming consumers). 204 F.3d at 1077.

For these reasons, the Court concludes that, in the usual case as described in note 3, *supra*, the amount placed in controversy by a demand to enjoin a defendant's foreclosure will be no more than the fair market value of the property at the time of removal, less the amount of mortgage debt which the net proceeds[6] of the foreclosure sale will eliminate.[7] As *Mapp II* notes, in the usual case described in note 3, the mortgagee typically will bid at least the amount of the mortgage debt. 2009 WL 3664118 at *3. Thus, the foreclosure sale ordinarily

---

[6] By agreement, the costs of the sale typically must be paid or reimbursed out of the sale proceeds.

[7] This is essentially the rule announced as dicta in *Castarphen I*. 2009 WL 1035490 at *6 n.12.

will generate proceeds sufficient to eliminate that debt, leaving only the gap between fair market value and mortgage debt (the plaintiff's equity, if otherwise unencumbered) as his maximum potential loss should foreclosure not be enjoined.

However, and as *Mapp II* also notes, the mortgagee's performance of its legal duties typically results in a sales price "closely tied to fair market value." 2009 WL 3664118 at *3.[8] Thus, in the usual case described in note 3, the foreclosure sale likely will generate net proceeds in excess of the amount required to retire the mortgage debt. The mortgagor will receive the benefit of this excess, either by its application to other liens on the property, payment to the mortgagor, or some combination of the two. *Id*. The monetary value of any such additional benefit must also be subtracted from fair market value in determining the amount in controversy.

In sum, to meet its burden of establishing the amount in controversy based on a request to enjoin foreclosure in the usual case described in note 3, a removing defendant must show by a preponderance of the evidence that, more likely than not, the net proceeds of a foreclosure sale will fall more than $75,000 short of the property's fair market value as of the time of removal. All of the figures playing into this calculation may be established by various means, the range of which need not be explored herein.

In rejecting the plaintiff's proposed "equity" approach – of which the rule announced herein is a refinement – the *Mapp II* Court recognized that a mortgagor "benefit[s]" from a foreclosure by the "cancellation of the debt, at least up to the value of the real estate." 2009 WL 3664118 at *3. The *Mapp II* Court considered this fact immaterial because the plaintiff's purpose in seeking to enjoin foreclosure was not "to obtain the value of the equity in his home." *Id*. at *4. The Court finds this explanation unpersuasive because it is unresponsive to the test for evaluating the amount in controversy when injunctive relief is sought. The issue is "the

---

[8] Even if the mortgagee is disinclined to bid more than the debt amount, third-party bidders may do so.

monetary value of the benefit that would flow to the plaintiff if the injunction were granted," *Cohen*, 204 F.3d at 1077, or "the losses that will follow from" the denial of such relief. *Hunt*, 432 U.S. at 347. What matters is not the benefit or loss the plaintiff *seeks* to obtain or avoid by an injunction but the benefit or loss he *will* obtain or avoid. In *Cohen*, for example, the plaintiffs sought by injunction to receive the benefit of an informed class, but the Court measured benefit by what the injunction would actually accomplish – essentially nothing, because the class notice would already have bestowed the desired benefit even before an injunction could issue. 204 F.3d at 1077-78.

The *Mapp II* Court also noted that "[t]he property sells at fair market value, not the 'equity' claimed by the mortgagor." 2009 WL 3664118 at *3. This is true but irrelevant, since it does not affect the net benefit to his situation that the plaintiff receives from obtaining an injunction against sale of the property.

The *Mapp II* Court cited several cases in support of its decision, but none addresses the issue involved here and in *Mapp II*. In *Frontera Transportation Co. v. Abaunza*, 271 F. 199 (5th Cir. 1921), the plaintiff did not seek to enjoin foreclosure of a mortgage on which he owed money but sought to quiet title on the grounds the mortgage debt had been satisfied. *Id*. at 199-200. In *Greenfield v. United States Mortgage Co. of Scotland, Ltd*., 133 F. 784 (E.D. Ark. 1904), the plaintiff sought to quiet title on the grounds the mortgage and underlying loan were void. *Id*. at 785. Since the plaintiffs in these cases asserted there was no mortgage debt, foreclosure could not result in an offsetting benefit of eliminating or reducing that debt. In *Occidental Chemical Corp. v. Bullard*, 995 F.2d 1046 (11th Cir. 1993), foreclosure was not in the picture at all; instead, the plaintiff purchaser sought to specifically enforce a contract for the sale of land. *Id*. at 1047. And in *Garland v. Mortgage Electronic Registration Systems, Inc*., 2009 WL 1684424 (D. Minn. 2009), foreclosure had already occurred, and the relief sought was a declaration that the defendant had had no standing to foreclose; to the extent an argument could have been made that the amount in controversy should have

accounted for the benefit to the plaintiffs of having their mortgage paid off, it was not made and thus not considered by the Court. *Id*. at *1-2.[9] In short, none of the authorities cited in *Mapp II* supports a raw property-value assessment of the amount in controversy in the usual case as described in note 3.[10]

The parties have relied on no Eleventh or former Fifth Circuit authorities, and the Court has found none that directly answer the question presented. *Frontera Transportation* and *Bullard* have been discussed above. In *Orton v. Mathews*, 572 Fed. Appx. 830 (11th Cir. 2014), the Court stated that, "[i]n a quiet title action, the amount in controversy for determining subject matter jurisdiction is the value of the property." *Id*. at 831. In *Hosseinzadeh v. Green Point Mortgage Funding, Inc*., 577 Fed. Appx. 925 (11th Cir. 2014), the Court likewise ruled that a complaint seeking to enjoin foreclosure and to quiet title placed the value of the property in controversy. *Id*. at 927. Both these cases are consistent with *Frontera Transportation*, but neither addresses a situation where the plaintiff does not seek to quiet title or otherwise negate the underlying debt.

In *Waller v. Professional Insurance Corp*., 296 F.2d 545 (5th Cir. 1961), the Court articulated "the principle that when the validity of … a right to property is called into question *in its entirety*, the value of the property controls the amount in controversy." *Id*. at 547-48 (emphasis added). Such a principle would apply when a mortgagor seeks a declaration that his debt is discharged or otherwise can never

---

[9] The *Mapp I* Court, in its truncated discussion, cited only *Frontera Transportation* and *Siewak v. AmSouth Bank*, 2006 WL 3391222 (M.D. Fla. 2006). *Siewak* did not involve a requested injunction against foreclosure but a request for a declaration of homestead status, for the purpose of avoiding enforcement of a judgment lien against the property. *Id*. at *1-2. Enforcement of the lien would have resulted in no offsetting benefit to the plaintiffs.

[10] In addition to *Mapp II*, the defendant cites several other trial court decisions. (Doc. 1 at 6-8; Doc. 12 at 7-8). Some of these cases rely on *Mapp II* and some do not, but all of them share that decision's failure to account for the benefit of a reduced or eliminated debt that flows necessarily from foreclosure. They are thus no more persuasive than is *Mapp II*.

11

be collected, but it does not apply when, as here, the plaintiff acknowledges an indebtedness but denies the defendant's present right to collect it by foreclosure. *E.g., TJM MAC LLC v. Mortgage Electronic Registration Systems, Inc.*, 2014 WL 4976819 at *2 (M.D. Fla. 2014) (*Waller* does not apply when "the plaintiff challenges only the right to foreclose, not the lien").

Finally, in *Ballew v. Roundpoint Mortgage Servicing Corp.*, 491 Fed. Appx. 25 (11th Cir. 2012), where the plaintiffs sued to enjoin a foreclosure sale of their home and acknowledged a mortgage debt exceeding $43,000, the Court declared that, "[b]ecause the Ballews sought injunctive relief, the amount in controversy [was] measured by the value of the object of the litigation, that is, the property's undisputed fair market value." *Id*. at 25 (citing *Bullard*, 995 F.2d at 1047). The *Ballew* Court offered no other explanation for its decision. As noted, *Bullard* did not involve foreclosure but specific performance of a contract to sell land; it therefore does not support the *Ballew* Court's conclusion. "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Construction, Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007). For reasons stated in this opinion, the Court does not find *Ballew*'s legal analysis persuasive and so declines to follow it.

Now to the application of the adopted standard. The defendant asserts that the tax-assessed value of the property ($121,830) stands as a reasonable estimate of fair market value. (Doc. 1 at 7). The defendant also identifies the unpaid principal balance on the loan shortly before removal as $75,579.42. (Doc. 12 at 8 n.5). Because the fair market value significantly exceeds the outstanding loan balance, it is more likely than not that the foreclosure sale will generate net proceeds sufficient to eliminate the mortgage debt. Thus, the amount in controversy cannot exceed approximately $56,250. And because the fair market value exceeds the loan balance, it is also more likely than not that the sales price will roughly approximate fair market value; while it is open to a defendant to show

that the circumstances of a particular case render such an outcome less than likely, the defendant has not attempted to make such a showing.

In sum, the plaintiff has not shown by a preponderance of the evidence that the net proceeds of a foreclosure sale will, more likely than not, fall more than $75,000 short of the property's fair market value. The defendant therefore has not met its burden of showing that the amount placed in controversy by the plaintiffs' demand for injunctive relief exceeds the jurisdictional minimum.

Of course, if a complaint seeks relief in addition to an injunction, any non-redundant value of such relief can be added to the value of injunctive relief in assessing the amount in controversy. Here, the only additional relief the plaintiffs seek is a declaration "which finds and declares that the Defendant has no lawful right to a foreclosure." (Doc. 1-1 at 4). Because this is but a restatement of the requested injunctive relief, it adds nothing to the amount in controversy.

As noted, the defendant argues in the alternative that the amount in controversy should be measured by the original loan amount or by the outstanding balance of the loan, both of which exceed $75,000. The defendant suggests that, by seeking a permanent injunction and including a residual demand for "such other, further or different relief that may be just and proper in the premises," (Doc. 1-1 at 4), the plaintiffs have "arguably place[d] the entire amount of the debt at issue." (Doc. 1 at 7). The defendant does not explain, and the Court does not discern, how such a position could be arguable. The complaint plainly does not seek a declaration that the plaintiffs owe nothing to the defendant or that the defendant is precluded from ever recovering the debt by foreclosure regardless of what circumstances may arise in the future. On the contrary, the complaint seeks only to enjoin the defendant from foreclosing based on a "default" created by the defendant's own wrongful refusal to accept payments the plaintiffs have properly tendered.

**CONCLUSION**

For the reasons set forth above, the plaintiffs' motion to remand is **granted**. This action is **remanded** to the Circuit Court of Monroe County.

DONE and ORDERED this 2nd day of December, 2014.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE